**faIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MANDEL METALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14 CV 8493 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| WALKER GROUP HOLDINGS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action involves a dispute arising from a series of contracts for the sale and purchase of aluminum sheet and plating between August and December of 2013. Plaintiff Mandel Metals, Inc., the seller, ("Mandel") initiated the lawsuit on October 28, 2014, and Defendant Walker Group Holdings, the buyer, ("Walker Group") filed its amended answer, defenses, and counterclaim [25] thereafter on January 15, 2015. Currently pending before the Court are Mandel's motions to dismiss and strike Walker Group's amended counterclaim and affirmative defenses [31, 33].

For the reasons set forth below, the Court grants in part and denies in part the pending motions. Specifically, Mandel's motion to dismiss [31] is granted with respect to Counts I, II, III, and V, and denied with respect to Count IV. Mandel's motion to strike [33] is granted with the exception of the defenses set forth in paragraphs four, seven, and eight and Walker Group's answer. See [25], Defenses ¶¶ 4, 7, 8.

**I.      Background**

The facts are drawn from Mandel's complaint [1] and Walker Group's amended counterclaim [25]. For purposes of deciding the pending motions, the Court assumes as true all

well-pleaded allegations set forth in the counterclaim. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Mandel is an Illinois corporation headquartered in Franklin Park, Illinois, with additional locations in Dallas, Texas and Cleveland, Ohio. [1], Compl. ¶ 2. Mandel stocks, processes, and distributes industrial aluminum coil, sheet, and plate. *Id.* Walker Group consists of several subsidiaries and is itself a wholly owned subsidiary of Wabash National, a Delaware corporation headquartered in Lafayette, Indiana. *Id*. at ¶ 3; [25], Am. Counterclaim ¶ 3. Walker Group is headquartered in New Lisbon, Wisconsin and manufactures semi-trailers and liquid transportation tanks. See [1], Compl. ¶¶ 3, 5. Its products, which include aluminum tankers, are sold through several business divisions, including Walker Transport, Walker Engineered, Walker Stainless Equipment, and Walker Barrier Systems. See *id.* at ¶ 4.

Department of Transportation ("DOT") regulations require that aluminum tankers have a minimum thickness of 0.173 inches. [25], Am. Counterclaim ¶ 16. To ensure compliance, Walker Group uses aluminum with a minimum thickness of 0.177 inches to allow for "polishing and finishing [ ] before final manufacture" of the tankers. See *id.* at ¶ 26. Prior to the purchases at issue, Walker Group had ordered aluminum from Mandel that met its thickness requirement, and, on at least one occasion, had declined to order from Mandel when the aluminum did not meet that requirement. *Id.* at ¶¶ 17–18.

On August 28, 2013, Walker Group sent Mandel a request for a quote for aluminum "WG MIN Thickness Req'd" of 0.177, 0.190, and 0.235. [25], Am. Counterclaim ¶ 19. In response, Jayson Fetters of Mandel acknowledged via e-mail and in verbal communications that the requested aluminum was for "minimum thickness," not "nominal thickness," and further represented that Mandel had aluminum that would meet Walker Group's requirements. See *id.* at

¶¶ 21, 22, 23.  Walker Group further alleges that Mandel had reason to know of Walker Group's purpose for the aluminum—the construction of DOT petroleum tankers—and that it "never would have ordered the materials [from Mandel] but for Mandel's representations" about the aluminum.  *Id.* at ¶¶ 25, 78.  Thereafter, during the months of August, September, October, November, and December of 2013, Walker Group placed several orders for aluminum (the "Purchase Orders").  See [32-1], Purchase Orders; see also [1], Compl. ¶¶ 10, 16, 20, 25, 27, 30, 33, 38, 40.  The Purchase Orders specified that the aluminum have a thickness between 0.177 and 0.188, which is the industry standard for 0.177 minimum thickness.  [25], Am. Counterclaim ¶ 27.

Walker Group alleges that all of its suppliers, including Mandel, are required to comply with certain terms and conditions (the "Terms and Conditions").  [25], Am. Counterclaim ¶ 6. The Terms and Conditions are not expressly set forth in the Purchase Order forms, however; the Purchase Order forms also state that, "Acceptance and Acknowledgement * * * is expressly limited to the terms and conditions stated herein."  [32-1], Purchase Orders at 37–74. Nonetheless, Walker Group alleges that the Terms and Conditions were incorporated by reference into the Purchase Orders via web-hosted documents, oral communications, and e-mail exchanges between the parties; Walker Group further alleges that Mandel had actual knowledge of the Terms and Conditions.  [25], Am. Counterclaim ¶ 9.  In addition, the last four Purchase Orders at issue (of eight total) reference the Terms and Conditions in a provision that states:

> "PURCHASE ORDER MUST BE CONFIRMED WITHIN 24 HOURS OF RECEIPT * * * PER [WABASH NATIONAL'S] TERMS AND CONDITIONS WHICH CAN BE FOUND AT: http://www.walkergh.com/docs/index.html."

[32-1], Purchase Orders at 46–74 (emphasis and ellipses in original).  As noted, Walker Group is a subsidiary of Wabash National; Walker Group alleges that it uses Wabash National's various

forms, including purchase order forms.  [25], Am. Counterclaim ¶ 1.

Several provisions of the Terms and Conditions are relevant here.  First, the Terms and Conditions provide that: "In case of any defect or noncompliance with any provision of this Purchase Order, Buyer shall have the right to reject, *at any time*, any goods covered by this Purchase Order."  [25], Am. Counterclaim ¶ 12 (emphasis added).  They further require the seller to:

> [I]ndemnify, assume the defense of, and hold harmless Buyer as set forth in the Defend, Indemnify & Hold Harmless Agreement provided by Buyer to Seller, the terms of which are specifically and fully incorporated by reference into these Purchase Order Terms.

*Id.* at ¶ 14.  Finally, they state that, "Seller's Acknowledgement of Buyer's Purchase Order implies acceptance of the[ ] [Terms and Conditions]."  [32-1], Purchase Order Terms & Conditions at 35.

In its counterclaim, Walker Group alleges that the aluminum that it ordered based on Mandel's August 28, 2013 representations did not conform to the agreed 0.177 minimum thickness.  [25], Am. Counterclaim ¶ 33.  Walker Group alleges that it did not learn that the aluminum was too thin until after Wabash National had fully manufactured ten, and partially manufactured three, tankers using the sub-standard aluminum.  *Id.* at ¶ 35. When Walker Group learned of the defects, it allegedly "reject[ed] the non-conforming goods and notif[ied] Mandel[.]"  *Id.* at ¶ 36.  In particular, Wabash National sent a letter on January 31, 2014 to Mandel, following prior e-mail and verbal communications, reiterating its rejection of the goods and explaining the deficiencies in the aluminum.  *Id.* at ¶ 38.  Mandel issued a credit to Walker Group for some of the material but also sent a letter on February 21, 2014, claiming that the aluminum was ordered only at "nominal thickness."  *Id.* at ¶¶ 37, 43.

In its complaint, Mandel alleges that it fully performed under the Purchase Orders and

that Walker Group has not paid for all of the aluminum that it ordered. According to Mandel, Walker Group still owes more than $92,000 for the aluminum that it ordered. Walker Group brings five counterclaims against Mandel, including breach of contract, rescission of the Purchase Orders, fraud, breach of implied warranty of fitness for a particular use, and breach of an express warranty.

## II.    Legal Standard

Mandel moves to dismiss Walker Group's counterclaims under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss is not to decide the merits of the case, but instead to test the sufficiency of the complaint. See *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). As noted, when reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in the counterclaim and draws all reasonable inferences in the non-movant's favor. *Killingsworth,* 507 F.3d at 618.

To survive a Rule 12(b)(6) motion, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations also must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and

the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

Mandel also moves to strike Walker Group's affirmative defenses. Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike affirmative defenses may be used to expedite a case by "remov[ing] unnecessary clutter from the case." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Man Roland, Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 578 (N.D. Ill 1999); *Codest Eng'g v. Hyatt Int'l Corp.*, 954 F. Supp 1224, 1228 (N.D. Ill 1996). "Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact. Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Fin., Inc*, 883 F.2d at 1294. As such, defenses must set forth a "short and plain statement," of the defense. *Id.* (citing Fed. R. Civ. P. 8(a)). The Court construes the defenses in a liberal manner.

### III.     Mandel's Motion to Dismiss the Amended Counterclaim [31]

The Court first addresses the motion to dismiss Walker Group's amended counterclaim, which contains five counts, including breach of contract, rescission, fraud, breach of express warranty, and breach of implied warranty of fitness for a particular purpose. In support of its motion, Mandel relies on Illinois law and argues that Illinois law should apply because the state of Illinois is most closely connected to the facts giving rise to the dispute. See [32], Mem. at 3. Mandel argues that Wisconsin law also could apply, because Walker Group negotiated and entered into the Purchase Orders in Wisconsin, the aluminum was shipped to Wisconsin, and the

aluminum was used to manufacture the tankers in Wisconsin. See *id.* Mandel contends that the law is substantially similar in both states, however, and that regardless of which state's law governs, the result is the same. See *id.* In its response, Walker Group argues that Indiana law also may apply—as the Terms and Conditions call for the application of Indiana law—but agrees that there are no conflicts among the laws of the potentially relevant jurisdictions (Indiana, Illinois, and Wisconsin). [44], Resp. at 8, n.2. Because (1) the parties have not fully engaged in a choice-of-law analysis, (2) they agree that there are no significant conflicts among the laws of the potentially relevant states, and (3) they both have cited primarily to Illinois law in their briefs, the Court will apply Illinois law for present purposes, including the Uniform Commercial Code (the "UCC") as adopted in Illinois. See *Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992) ("[B]efore entangling itself in messy issues of conflict of law a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."); *In re Air Crash Disaster*, 526 F. Supp. 226, 228 (N.D. Ill. 1981) (observing that there is no need to make a choice-of-law determination when the result is the same under the potentially relevant bodies of law). The Court will engage in a complete choice-of-law analysis at a later time, if one is necessary.

A.    **Breach of Contract**

In Count I, Walker Group brings a breach of contract claim that is premised, in part, on Mandel's alleged breach of the Terms and Conditions that allegedly were incorporated into the Purchase Orders. Under the Terms and Conditions, Walker Group has the right to reject goods "at any time," and Mandel must indemnify Walker Group for any losses caused by a breach of the Terms and Conditions. See [25], Am. Counterclaim ¶¶ 12–14. Mandel argues that the Terms and Conditions were not incorporated into any of the Purchase Orders and that the breach

of contract claim therefore should be dismissed.  For the reasons explained below, the Court concludes that Walker Group has not sufficiently alleged that the Terms and Conditions were incorporated into the Purchase Orders and therefore dismisses Count I to the extent that it is premised on a breach of the Terms and Conditions.[1]

## 1.    The First Four Purchase Orders

The initial four Purchase Orders from August, September and October of 2013 make no reference to the Terms and Conditions.  With respect to these purchases, Walker Group argues that references to the Terms and Conditions in web-hosted documents, oral communications, and e-mail exchanges support its allegation that the Terms and Conditions were incorporated into the Purchase Orders.  Mandel argues that the unambiguous, express language of the Purchase Orders precludes incorporation, in particular, the clause stating that "[a]cceptance and acknowledgement of this Purchase Order is expressly limited to the terms and conditions stated herein."   See [32-1], Purchase Orders at 37–45.  The Court agrees.

"[W]here parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence."  *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 636 (7th Cir. 2007) (quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 885 (Ill. 1999)).  Accordingly, if a contract is facially unambiguous and contains an integration clause, as is the case here, courts are barred from considering extrinsic evidence and the "four corners rule" applies.  *Id.*   Under that rule, the Court may not consider evidence related to understandings "not reflected in the terms of the [Purchase Orders], reached either before or at the time of [ ] execution, where those terms would vary or modify the terms of the [Purchase

---

[1] The Court notes that Mandel did not move to dismiss the portion of Count I that alleges that Mandel breached the parties' contracts by providing non-conforming goods under the UCC.  See [25], Am. Counterclaim ¶ 49.

8

Orders.]" See *id.* at 637.

Accordingly, to the extent that Walker Group alleges that the parties incorporated the Terms and Conditions through various communications before the Purchase Orders were sent and accepted by Mandel, the Court must reject that claim. Likewise, none of Walker Group's allegations might support the inference that the parties agreed to incorporate the Terms and Conditions at some point subsequent to the acceptance of the Purchase Orders. See *Tadros v. Kuzmak*, 277 Ill. App. 3d 301, 312 (1st Dist. 1995) (observing that a written contract "can be modified by a subsequent oral agreement" even if the contract precludes modification). Rather, there are only vague and general allegations about Mandel's awareness of the Terms and Conditions and discussions about them. See [25], Am. Counterclaim ¶¶ 6–8.

### 2.     The Last Four Purchase Orders

The last four Purchase Orders from November and December of 2013 also contain the integration clause discussed above but include a separate provision stating that each Purchase Order "must be confirmed within 24 hours of receipt" per Wabash National's "Terms and Conditions which can be found at: http://www.walkergh.com/docs/index.html." [32-1], Purchase Orders at 46–74. Walker Group contends that this provision incorporates the Terms and Conditions from the above website, including a term that allows Walker Group to charge Mandel for all of the damages that it caused. See [44], Resp. at 9. Mandel denies that the doctrine of incorporation applies in these circumstances, and argues that even if incorporation applies, it is limited to the 24-hour confirmation term that explicitly is referenced in the Purchase Orders. The Court agrees.

Under Illinois law, "[f]or a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of

the contract." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). Incorporation must be "clear and specific." *Id.* See also *Jago v. Miller Fluid Power Corp.*, 245 Ill. App. 3d 876, 879 (2d Dist. 1993) ("The parties to a contract may incorporate by reference another document if that intention is clearly shown on the face of the contract."). The inquiry into whether an external document is incorporated into a contract is limited to the four corners of the contract at issue. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002). Importantly, "mere reference to another contract or document is not sufficient to incorporate its terms[.]" *Id.* at 666.

Here, the Purchase Orders do not contain an express intent to incorporate the Terms and Conditions found at the referenced web address. The Purchase Orders only state that confirmation must occur within 24 hours of receipt, in accordance with Wabash National's Terms and Conditions; the Orders are silent as to whether the Terms and Conditions are part of the Purchase Orders. See *Rosenblum*, 299 F.3d at 665–66 (finding that employment agreement was not incorporated by reference into acquisition agreement, even though acquisition agreement made several references to employment agreement, including making it a condition precedent, because agreement was silent on incorporation). In addition, the integration clause in the Purchase Orders—which states that the Orders are "expressly limited to the terms and conditions stated [there]in"—further supports the conclusion that the parties did not silently incorporate outside materials into the Purchase Orders. See *id.* at 665 ("The presence of a merger clause is strong evidence that the parties intended the writing to be the complete and exclusive agreement between them.") (quoting *L.S. Health & Son, Inc., v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 569 (7th Cir. 1993)). Finally, even if the Purchase Orders did evidence intent to incorporate the Terms and Conditions, incorporation would be limited to terms that relate to the 24-hour confirmation

requirement. See 17A Am. Jur. 2d Contracts § 391 (May 2015) ("If in a written contract, a reference is made to another writing for a particularly designated purpose, the other writing becomes a part of the contract only for the purpose specified, and is foreign to the contract for all purposes other than the one specified.").

For all of these reasons, the Court grants Mandel's motion to dismiss Walker Group's breach of contract claim to the extent that it is premised on a breach of the Terms and Conditions.

### B.    Rescission

In Count II, Walker Group alleges that the contract with Mandel should be rescinded because Mandel provided non-conforming goods, which Walker Group rejected. See [25], Am. Counterclaim ¶¶ 56–57. As an equitable remedy, rescission "means the cancelling of a contract so as to restore the parties to their initial status." *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 934 (1st Dist. 2010) (quoting *Puskar v. Hughes*, 179 Ill. App. 3d 522, 528 (2d Dist. 1989)). "Where nonperformance or a breach of contract is of such a nature and of such importance that the contract would not have been made without it," rescission may be appropriate. *Id.* at 974 (quoting *Ahern v. Knecht*, 202 Ill. App. 3d 709, 715 (2d Dist. 1990)). To state a valid claim, a plaintiff must allege: "(1) substantial nonperformance or breach by the defendant[,] and (2) that the parties can be restored to the status quo *ante*." *Id.*

As a preliminary matter, the Court notes that Walker Group's request for damages in Count II, [25], Am. Counterclaim ¶ 58, is improper. Rescission is an equitable remedy that simply places the parties back into their pre-contract positions. See *Pardo v. Mecum Auction, Inc.*, -- F. Supp. 3d --, 2014 WL 7403286, at *5, n.3 (N.D. Ill. Sept. 29, 2014). Although Walker Group may seek, at the pleadings stage, both legal remedies for breach of contract and the

equitable remedy of rescission, it may not recover compensatory damages through a rescission claim. See *id.* at *6; see also *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 356 (1st Dist. 2011) ("[A] remedy based on rescission is inconsistent with a remedy of damages, which arises out of the enforcement of the contract, and the award of both is, therefore, inappropriate.").

More importantly, Walker Group's allegations do not support a rescission claim. Although Walker Group alleges that "Mandel provided non-conforming goods," and that it "either rejected or rescinded the non-conforming goods," [25], Am. Counterclaim ¶¶ 56–57, it fails to allege the second element of rescission—that the parties may be returned to their proper pre-contract positions or to the status quo as it existed at the time the Purchase Orders were made. See *Horwitz*, 399 Ill. App. 3d at 974. Rather, Walker Group alleges that it fully constructed ten tankers, and partially constructed three more, before it discovered that the aluminum was too thin to meet DOT regulations. Under such circumstances, it is not clear to the Court how the parties could be restored to their pre-contract positions by simply cancelling the Purchase Orders. See *id.* ("Restoration of the status quo initially requires return of any property or other consideration that has passed to the rescinding party under the contract[.]") (internal citations and quotations omitted). The Court accordingly dismisses Count II.

### C. Fraud

In Count III, Walker Group brings a fraud claim based on alleged misrepresentations that Mandel made about the aluminum that it sold to Walker Group. In particular, Walker Group alleges that Mandel "induced [it] into purchasing the non-conforming aluminum by falsely and fraudulently representing that it conformed to the agreed upon .177 minimum thickness," and "misled [it] as to the thickness of the aluminum sheeting"; Walker Group allegedly relied on the misrepresentations and would not have ordered the aluminum from Mandel but for the

misrepresentations. [25], Am. Counterclaim ¶¶ 34, 63–66. Walker Group contends that it has sufficiently pleaded common law fraud or fraud in the inducement, which is a form of common law fraud. Mandel moves to dismiss, arguing that the purported fraud is premised entirely on Walker Group's breach of contract claim.

To plead a common law fraud action, a plaintiff must allege "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496–97 (Ill. 1996)). Fraud allegations are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which require the plaintiff to plead the "who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). As Mandel points out, a fraud claim may not be premised on the mere breach of a contract; rather there must be a "fraudulent act distinct from the alleged breach of contract." See *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011). In other words, a fraud claim must contain "something more than reformulated allegations of a contractual breach * * * dressed up in the language of fraud." *Id.* at 395. In this case, two deficiencies in the fraud allegations require dismissal of Count III.

To begin, the alleged fraud is not sufficiently pleaded under the heightened pleading requirement of Rule 9(b). There are only four paragraphs that describe purported misrepresentations by Mandel. See [25], Am. Counterclaim ¶¶ 34, 60, 64–65. These paragraphs generally allege that Mandel falsely represented that the aluminum conformed to Walker Group's required thickness, that Mandel had aluminum of 0.177 minimum thickness, and that the

aluminum that Walker Group ordered met its thickness requirement. See *id.* These allegations do not, however, include any additional details regarding the "who, what, when, where and how" of the purported fraud. For example, Walker Group fails to allege who made fraudulent statements, exactly what was said, or when and where the misrepresentations occurred. The Court notes that there are a couple of paragraphs describing communications between Jayson Fetters of Mandel and Chuck Williams of Walker Group between August 28 and August 30, 2013, in which Fetters allegedly stated that Mandel "had material that would meet the .177 minimum thickness requirements." *Id.* at ¶ 22. Walker Group does not specifically allege, however, that this statement was false, that Fetters knew it was false, or that Fetters made a false statement to induce Williams to place an order. See *id.* at ¶¶ 21−24.

Likewise, as currently pleaded, the fraud claim is premised entirely on what remains of Walker Group's breach of contract claim—that Mandel promised to deliver aluminum of a 0.177 minimum thickness, and that the aluminum that Walker Group received did not conform. Otherwise put, there are no "stand-alone allegation[s] of a fraudulent act or practice" that are "distinct from" Mandel's failure to provide conforming aluminum that conformed to what it promised. See *Greenberger*, 631 F.3d at 400–01. This renders the claim deficient, as a fraud claim cannot simply be a reformulation of a breach of contract claim. See *id.* For both of these reasons, the Court dismisses Count III.

### D. Breach of Implied Warranty of Fitness for a Particular Purpose

In Count V, Walker Group alleges that Mandel breached an implied warranty of fitness for a particular purpose. In particular, Walker Group alleges that the aluminum provided by Mandel was not suitable for the particular purpose for which it was intended and that Mandel knew of that purpose. Mandel argues that the claim should be dismissed because Walker Group

does not allege that it reasonably relied on Mandel to select and supply suitable aluminum for a particular purpose.

Under the UCC as adopted in Illinois, to state a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff must allege that "(1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Indus. Hard Chrome Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 746 (N.D. Ill. 1999) (citing 810 ILCS 5/2-315). With respect to the first element, Walker Group alleges that Mandel allegedly knew that the aluminum "was to be used by [Walker Group's subsidiary] to make a * * * trailer" and "was aware that Walker Group was ordering the aluminum sheeting for specific product lines and specific customer orders." [25], Am. Counterclaim ¶¶ 4, 28. Walker Group fails to allege the second and third elements, however—namely, its reliance on Mandel's skill and judgment to select suitable aluminum and Mandel's knowledge of such reliance.

The only relevant reliance allegations are those set forth in paragraphs 31 and 81, which allege that Walker Group "relied on Mandel's representations that the aluminum sheeting met the minimum thickness requirements set forth in communications * * * [and] the Purchase Orders," and "relied on Mandel's [sic] to supply suitable aluminum sheeting as discussed with and requested by Walker Group." [25], Am. Counterclaim ¶¶ 31, 81. These allegations do not state or suggest, however, that Walker Group relied on Mandel's skill and judgment to select aluminum that was suitable for building tankers or that would comply with DOT regulations.

To the contrary, Walker Group alleges that "[o]n or about August 28, 2013, [it] sent a request for quote regarding its need for aluminum with [minimum thicknesses] of .177, .190, and .235," *id.* at ¶ 19, thereby suggesting that Walker Group already had decided on the particular

aluminum that it needed for the project before discussing prices or any other specifics with Mandel. In addition, the representations that Mandel allegedly made about the aluminum concerned only its ability to provide the particular aluminum that Walker Group needed. There are no allegations that Walker Group relied on Mandel's expertise *to select* a particular aluminum of a particular thickness for the project. The Court therefore concludes that Walker Group has not sufficiently alleged the second and third elements of an implied warranty claim and dismisses Count V. See *Midland Supply Co., Inc. v. Ehret Plumbing & Heating Co.*, 108 Ill. App. 3d 1120, 1124 (5th Dist. 1982) (holding that defendant failed to prove implied warranty claim because "defendant, an experienced heating and plumbing contractor, knew the type of boiler it planned to purchase and merely inquired as to the various sizes and prices."); *Siemen v. Alden*, 34 Ill. App. 3d 961, 965 (2d Dist. 1975) (granting summary judgment because "no facts indicated that plaintiff relied on defendant's expertise in making his decision to purchase the saw. Rather, * * * plaintiff had decided to purchase an Alden saw prior to his initial contact with defendant.").[2]

### E.      Breach of Express Warranty

The remaining counterclaim is a breach of express warranty claim (Count IV). In particular, Walker Group alleges that Mandel breached an express warranty by promising that the aluminum would meet Walker Group's required thickness, but that Walker Group failed to deliver the aluminum as warranted. Under Section 2-313 of the UCC as adopted in Illinois, an express warranty is created where "(1) the seller makes an affirmation of fact or promise; (2) that relates to the goods; and (3) becomes part of the basis of the bargain between the parties." *Reid*

---

[2] In its response brief, Walker Group writes that it intended to allege that Mandel also breached the implied warranty of merchantability, but that it mislabeled Count V as solely asserting a breach of the implied warranty of fitness for a particular use. [44], Resp. at 13, 15, n. 4. If Walker Group still intends to assert an implied warranty of merchantability claim, it may do so in a second amended counterclaim by including the requisite allegations and properly labeling the count as such.

*v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905–06 (N.D. Ill. 2013) (citing *Royal Bus. Mach.,*
*Inc. v. Lorraine Corp.*, 633 F.2d 34, 41 (7th Cir. 1980)).  Mandel does not contest that Walker
Group sufficiently has alleged these elements, but argues that the claim should be dismissed
because Walker Group failed to provide seasonable notice of both its rejection of the aluminum
and the purported breach of an express warranty.[3]

Specifically, Mandel argues that Walker Group failed to timely reject the aluminum and
therefore accepted the aluminum despite the alleged non-conformity.  Once goods "are accepted,
[ ] the buyer must pay for them at the contract rate unless acceptance is revoked."  *Brule C.E. &*
*E. Inc. v. Pronto Foods Corp.*, 3 Ill. App. 3d 135, 137 (1st Dist. 1971).  Under the UCC, goods
must be rejected "within a reasonable time after delivery," by seasonably notifying the seller.
*Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 320 (2d Dist. 1999) (citing 810 ILCS
5/2-602).  Once goods have been accepted, the right to revocation of acceptance arises when the
buyer accepts goods * * * without discovery of [a] non-conformity if his acceptance was
reasonably induced either by the difficulty of discovery before acceptance or by the seller's
assurances."  *Id.* (quoting 810 ILCS 5/2-608(b)).  Mandel also argues that Walker Group failed
to timely notify it of the alleged breach of a warranty.  To recover for a breach of warranty under
the UCC, a "buyer must within a reasonable time after he discovers or should have discovered
any breach notify the seller of [the] breach[.]"  *Connick v. Suzuki Motor Co., Ltd.* 174 Ill. 2d 482,
492 (Ill. 1996) (quoting 810 ILCS 5/2-607(3)(a)).

"Whether a time for taking an action required by the [UCC] is reasonable depends on the
nature, purpose, and circumstances of the action."  *Al Maha Trading & Contracting Holding Co.*
*v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 939 (N.D. Ill. 2013) (quoting 810 ILCS 5/1-205(a)).

---

[3] Because the Court has determined that the Terms and Conditions were not incorporated by reference
into the Purchase Orders, Walker Group was not free to reject the aluminum "at any time," pursuant to the
Terms and Conditions.

Likewise, "[a]n action is taken seasonably if it is taken at or within the time agreed or, if no time is agreed, at or within a reasonable time." 810 ILCS 5/1-205(b). The reasonableness of a party's actions generally is an issue for the trier of fact. *Al Maha Trading*, 936 F. Supp. 2d at 940 (quoting *Veath v. Specialty Grain, Inc.*, 190 Ill. App. 3d 787 (5th Dist. 1989)).

Here, Walker Group alleges that it provided timely notice of its rejection of the aluminum, or alternatively, that it properly revoked its acceptance of the aluminum. [25], Am. Counterclaim ¶¶ 41, 42. It support, it alleges that it "did not learn of the non-conforming aluminum until after Wabash National fully manufactured ten (10) and partially manufactured three (3) tankers from materials that were too thin to conform to DOT regulations." *Id.* at ¶ 35. It further alleges that when it "learned of the non-conforming aluminum," it gave direct notice to Mandel by sending a letter on or about January 31, 2014 that outlined the defective materials and reiterated its rejection of them, following previous e-mail and verbal communications on the topic." *Id.* at ¶¶ 36, 38. According to the dates listed on the Purchase Orders, the January letter was sent about six weeks after the last order was to be delivered and about five months after the first Purchase Order was placed. See [32-1], Purchase Orders at 40, 50. Although Walker Group does not allege the specific reason that it did not discover the defects earlier (prior to manufacturing some of the tankers) it does allege that it requires a minimum thickness of 0.177 to ensure that after polishing and finishing, the aluminum maintains a minimum thickness of 0.173, as required by DOT regulations. See [25], Am. Counterclaim ¶¶ 16, 26. This allegation suggests that Walker Group perhaps did not realize the nonconformity until after it saw that the polished and finished aluminum did not comply with the thickness regulations.

Mandel nonetheless moves to dismiss, relying on *Brule C.E. & E., Inc.*, in which the Illinois Appellate Court reversed the trial court after a bench trial. There, the Appellate Court

found that a buyer could not have rejected an incinerator that it purchased—and therefore owed the remaining unpaid balance of the purchase price—because the buyer's actions indicated acceptance of the incinerator. In particular, the buyer used the incinerator for a period of two years and made repairs to it, knowing that it did not fully comply with the permit that was issued for its use. See *Brule C.E. & E., Inc.*, 3 Ill. App. 3d at 138. Here in contrast, Walker Group only had the various shipments of aluminum for between five months and six weeks before it allegedly sent Mandel a letter rejecting the aluminum or revoking its acceptance of the aluminum. Additionally, Walker Group alleges that it notified Mandel of the issue when it learned of the nonconformity.

Mandel finally argues that the claim should be dismissed because "Walker Group does not allege that it could not have discovered the thickness variation of the aluminum shipped by Mandel [ ] upon reasonable inspection." [32], Mem. at 12. Mandel further contends that it was unreasonable for Walker Group to begin constructing the tankers before testing the thickness of the aluminum. See *id.* Although Mandel's assertions may be correct, the Court is not inclined to determine reasonableness as a matter of law on the pleadings. See *Al Maha Trading*, 936 F. Supp. 2d at 940. The Court must construe Walker Group's allegations in the light most favorable to Walker Group, and concludes that Walker Group sufficiently has alleged that it notified Mandel of the alleged defects and of its rejection of the aluminum in a reasonable amount of time after receiving the goods. For all of these reasons, the Court denies the motion to dismiss Count IV.

## IV.     Mandel's Motion to Strike the Amended Affirmative Defenses [33]

Having decided the motion to dismiss, the Court now turns to Mandel's motion to strike Walker Group's affirmative defenses. Walker Group asserts eleven affirmative defenses to

Mandel's one-count breach of contract complaint, which is premised on Walker Group's failure to pay outstanding balances due to Mandel for the aluminum. Mandel alleges that it fully performed its obligations under the Purchase Orders and that Walker Group breached the Orders by not paying in full. See [1], Compl. ¶¶ 52–55. Mandel alleges that it still is owed $92,961. *Id.* at ¶ 1.

Mandel challenges all of Walker Group's affirmative defenses, which allege that (1) the complaint fails to state a claim on which relief can be granted; (2) the claim fails because Mandel did not comply with the Terms and Conditions of the Purchase Orders; (3) the claim fails because Mandel did not comply with the terms of an express warranty; (4) the claim is barred by estoppel; (5) the claim is barred by waiver; (6) Mandel cannot recover because Walker Group's acts were commercially reasonable, consistent with trade customs and industry standards, and justified under the circumstances; (7) the claim is barred by Mandel's fraud; (8) Mandel is precluded from judgment due to its own conduct; and (9) Walker Group properly rejected the non-conforming goods. See [25], Defenses ¶¶ 1–11. Walker Group originally asserted two additional defenses—that Mandel failed to name the proper party in interest and unclean hands, *id.* at ¶¶ 2, 5—but indicated in its opposition to the motion to strike that it will withdraw these defenses, [45], Resp. at 5. The Court accordingly grants the motion to strike with respect to these two defenses and turns to the merits of the remaining nine.

### A.      Failure to State a Claim

Walker Group first alleges that Mandel fails to state a claim on which relief can be granted. [25], Defenses ¶ 1. Mandel argues that this defense should be stricken because it fails to notify Mandel of any specific deficiencies in the complaint. The Court agrees.

As a preliminary matter, although "[t]here is some debate in this District regarding

whether 'failure to state a claim' may be raised as an affirmative defense or instead must be raised by separate motion," *Reis Robotics USA, Inc. v. Concepts Indus., Inc.*, 462 F. Supp. 2d 897, 905 (N.D. Ill. 2006), this Court believes that this defense is more appropriately asserted in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See, *e.g.*, *Illinois Wholesale Cash Register, Inc. v. PCG Trading, LLC*, 2009 WL 1515290, at *2 (N.D. Ill. May 27, 2009) (striking defense because "the proper vehicle for a party to establish a failure to state a claim is a Rule 12(b)(6) motion, not an affirmative defense."); *AEL Fin. LLC v. City Auto Parts of Durham, Inc.*, 2009 WL 2778078, at *13 (N.D. Ill. Aug. 31, 2009) (striking defense "because a motion to dismiss under Rule 12(b)(6) is not an affirmative defense"). Regardless, and as Mandel argues, the defense must be stricken because it is devoid of any allegations setting forth the purported deficiencies of Mandel's complaint. Nor has Walker Group incorporated or referenced any allegations from its counterclaim in this defense. Instead, Walker Group merely states in conclusory fashion that Mandel has not stated a claim.

This is insufficient under Federal Rule of Civil Procedure 8(a), which requires a short and plain statement of a defense. See also *Renalds v. S.R.G. Rest. Grp.*, 119 F. Supp. 2d 800, 803 (N.D. Ill. 2000) (striking affirmative defense asserting that counts in complaint failed to adequately state claims for relief because they "simply nam[ed] legal theories without indicating how they are connected to the case at hand."). "While the Federal Rules of Civil Procedure allow liberal notice pleading and do not require a claimant to set out in detail the facts upon which it bases a claim, they do not allow a claimant to merely recite the standard for a 12(b)(6) motion to dismiss, and to thereby 'abdicate the responsibility of alleging the basic facts demonstrating his entitlement to relief.'" *Id.* at 803–04 (quoting *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982)). For both of these reasons, the Court strikes Walker

Group's first affirmative defense.

### B.    Failure to Comply with the Terms and Conditions of the Purchase Orders

In its next affirmative defense, Walker Group alleges that Mandel's contract claim fails because Mandel did not comply with the Terms and Conditions of the parties' contracts.  In particular, Walker Group alleges that delivery of the nonconforming aluminum and Mandel's failure to "indemnify, assume the defense of, and hold harmless [Walker Group]" violated the Terms and Conditions that allegedly were incorporated into the Purchase Orders.  See [25], Defenses ¶ 3 (quoting amended counterclaim).  The Court already has determined, however, that Walker Group has not sufficiently alleged that the Terms and Conditions from Wabash National's website were incorporated into the Purchase Orders.  Accordingly, to the extent that this defense is premised on breaches of the Terms and Conditions, the Court strikes the defense.

### C.    Failure to Comply with the Terms of an Express Warranty, Waiver, and the Reasonableness of Walker Group's Acts

In its fourth defense, Walker Group alleges that Mandel's contract claim fails because Mandel did not comply with the terms of an express warranty regarding the thickness of the aluminum that it delivered.  See [25], Am. Counterclaim ¶ 4.  Mandel moves to strike, arguing that the defense is insufficient as a matter of law because it merely denies the allegations set forth in the complaint.  Mandel specifically points to paragraph 54 of the complaint, which alleges that Mandel "fully performed its obligations under each of the Purchase Contracts by shipping the aluminum plate and sheet order by Walker Group to Walker Group."  [1], Compl. ¶ 54.

Mandel is correct that an affirmative defense should "raise[ ] a matter outside the scope of [the] plaintiff's prima facie case," as opposed to offering a "simple denial" of the allegations. *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982) (citing 2A Moore's

Federal Practice P 8.27(3)).  Here, contrary to Mandel's characterization, Walker Group has not simply denied that Mandel performed its obligations under the Purchase Orders.  Rather, Walker Group alleges that Mandel "expressly warranted, orally and in writing, that certain aluminum would meet .177 minimum thickness," and that Mandel breached that warranty by delivering non-conforming aluminum.  [25], Defenses ¶ 4.  These allegations go beyond those set forth in the complaint—which do not allege that any representations or promises about the thickness of the aluminum were made—thus "suggest[ing] some other reason why [Mandel has] no right of recovery," *Bobbitt*, 532 F. Supp. at 736.  The Court further notes that affirmative defenses ordinarily "will not be struck if they * * * present questions of law or fact." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  The affirmative defense at issue presents several disputed questions of law and fact, such as whether an express warranty about the thickness of the aluminum was created and whether the aluminum delivered by Mandel conformed to what allegedly was warranted.

Mandel makes similar arguments in support of its motion to strike Walker Group's seventh and eighth defenses.  These defenses allege waiver by Mandel and that Walker Group's rejection of the aluminum was reasonable, consistent with trade customs and industry standards, and justified under the circumstances.  See [25], Defenses ¶¶ 7, 8.  Mandel argues that these defenses should be stricken because they merely restate denials of the allegations in the complaint.

With respect to the waiver defense, Mandel argues that the defense merely restates Walker Group's general denial of Mandel's entitlement to collect the remaining balance due for the aluminum.   Mandel points to paragraph 55 of Walker Group's amended answer, which denies that "[a]s a proximate result of Walker Group's breaches of the Purchase Contracts,

Mandel Metals has been damaged in the amount of $92,967.33[.]"  [25], Am. Answer ¶ 55.  The Court disagrees with Mandel's characterization of the waiver defense.  Walker Group actually alleges that "Mandel admitted that it mistakenly supplied Walker Group the wrong material and told Walker Group that Mandel would make it right with Walker Group."  [25], Defenses ¶ 7. The Court accordingly will not strike this defense, as it goes beyond a mere denial of Mandel's entitlement to the unpaid balance for the aluminum and presents questions of fact and law.  See *Bobbitt*, 532 F. Supp. at 736; *Heller Fin., Inc.*, 883 F.2d at 1294.

Likewise, in the eighth defense—that Walker Group's acts were commercially reasonable, consistent with industry customs and standards, and justified under the circumstances—Walker Group alleges facts that are outside the scope of those set forth in the complaint.  See [25], Defenses ¶ 8.  In particular, Walker Group references paragraphs 35 through 42 of its counterclaim, which allege that Walker Group did not learn of the non-conforming aluminum until after it had manufactured several tankers from aluminum that was too thin to meet DOT regulations.  See [25], Am. Counterclaim ¶¶ 35–42.  These paragraphs further allege that Walker Group took all necessary steps to reject the non-conforming goods, notified Mandel about the unsuitable aluminum, and sent a letter to Mandel outlining the damages that it had incurred.  See *id.*  These allegations are not mere denials of Mandel's entitlement to payment, and are sufficient because they allege facts outside the scope of the complaint.

For all of these reasons, the Court denies the motion to strike with respect to the defenses set forth in paragraphs four, seven, and eight of the amended answer.

### D.       Estoppel and Fraud

Walker Group also alleges that Mandel's contract claim is barred by Mandel's fraud and by the doctrine of estoppel, because Mandel knowingly and intentionally misled Walker Group by representing that it could deliver aluminum that met the required 0.177 minimum thickness. [25], Defenses ¶¶ 6, 9.   Because these defenses allege misrepresentations by Mandel, they are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, as previously discussed.   See *DiLeo*, 901 F.2d at 627.   As the Court explained in its discussion of Walker Group's counterclaim for fraud (Count III), the fraud allegations are deficient because they do not meet this heightened pleading standard and are merely a reformulation of the breach of contract claim.   The Court accordingly strikes the fraud defense.

The Court likewise concludes that Walker Group has failed to adequately plead an estoppel defense.   Equitable estoppel bars a person from "asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse."   *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (Ill. 2001).   Equitable estoppel requires that:

> (1) [T]he other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof.

*Id.* at 313–14.   Here, for the same reasons that the fraud allegations are insufficient, Walker Group fails to sufficiently allege the first and second elements of an estoppel defense—that Mandel made a misrepresentation and that the person making the misrepresentation knew at the

time it was made that it was untrue.  In particular, Walker Group does not sufficiently allege a false statement made by Jayson Fetters (the person who spoke to Walker Group) about the aluminum or that Fetters knew at the time that was he was conveying false information about the aluminum.

For all of these reasons, the Court grants the motion to strike defenses six and nine.

### E.     Mandel's Conduct and Walker Group's Rejection of Non-Conforming Goods

In its tenth affirmative defense, Walker Group alleges that Mandel "is precluded from judgment due to its own conduct, or by the conduct of its agents, representatives, and/or consultants," because it "knowingly and intentionally misled Walker Group * * * admitted fault [ ] to Walker Group," and offered to "make [the situation] right."  [25], Defenses ¶ 10.  In its final defense, Walker Group alleges that "it properly rejected non-conforming goods."  *Id.* at ¶ 11. Mandel argues that these defenses should be stricken as redundant and because they merely deny the allegations of the complaint.  The Court agrees that these defenses are redundant of other defenses and thus should be stricken.

A court may strike redundant matter from a pleading, see Fed. R. Civ. P. 12(f), or allegations that contribute "unnecessary clutter" in order to expedite a case, *Heller Fin., Inc.*, 883 F.2d at 1294.  See also *Renalds*, 119 F. Supp. 2d at 802 ("[C]ourts should strike affirmative defenses that are * * * redundant, for example if they raise matters already raised in the defendant's denial.").  Here, Walker Group's tenth affirmative defense is nothing more than a restatement of the allegations that comprise the defenses set forth in paragraphs seven and nine (the waiver and fraud defenses), but combined in a single paragraph.  Likewise, Walker Group's final defense alleging that it rejected non-conforming goods incorporates no additional allegations beyond those that comprise the "reasonable acts" defense set forth in paragraph eight;

26

both defenses are premised on the same paragraphs from Walker Group's counterclaim that describe Walker Group's alleged rejection of the aluminum. See [25], Am. Counterclaim ¶¶ 35–42. Notably, one of those paragraphs simply repeats the eleventh defense, as it alleges that "Walker Group provided seasonable and timely notice of rejection of the non-conforming goods." *Id.* at ¶ 41. Because Walker Group's tenth and eleventh defenses already are encompassed by other defenses, the Court strikes them in the interest of ridding Walker Group's answer of redundant matter and allegations that simply clutter the case.

To summarize, for all of the reasons stated above, the Court grants Mandel's motion to strike the affirmative defenses, with the exception of the defenses set forth in paragraphs four, seven, and eight (failure to comply with an express warranty, waiver, and Walker Group's reasonable acts). All of the other defenses—those set forth in paragraphs one, two, three, five, six, nine, ten, and eleven—are stricken without prejudice and may be repleaded if Walker Group believes that it can cure the deficiencies explained above. See *Heller Fin., Inc.*, 883 F.2d at 1294 ("[W]e note the absence of any resultant prejudice which could have occurred by the district court's striking of Midwhey's defenses * * * as leave to amend [defenses] is freely granted as justice requires.") (citing Fed. R. Civ. P. 15(a)).

## V. Conclusion

For the reasons set forth above, the Court grants in part and denies in part Mandel's motions. The motion to dismiss Walker Group's counterclaim [31] is granted with respect to Counts I, II, III, and V, and denied as to Count IV. The motion to strike Walker Group's affirmative defenses [33] is granted with the exception of the defenses set forth in paragraphs four, seven, and eight. The foregoing claims and defenses are dismissed and stricken without prejudice. If Walker Group believes that it can amend its pleadings to cure the deficiencies

identified in this opinion, it may do so within 28 days of the date of this order.


Dated: June 26, 2015

_____
Robert M. Dow, Jr.
United States District Judge